IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| Steven Skibicki,<br>    *Plaintiff*,<br><br>        v.<br><br>Community Rae Automotive, LLC<br>(d/b/a Community Toyota),<br>    *Defendant* | Case No. _____<br><br><br>JURY DEMANDED |

### STEVEN SKIBICKI'S COMPLAINT

The Plaintiff, Steven Skibicki, files this complaint against the Defendant, Community Rae Automotive, LLC (d/b/a Community Toyota). For cause of action, the Plaintiff would show:

### A. Nature of Action

This is an action for declaratory and equitable relief, as well as monetary damages, to redress the Defendant's unlawful employment practices against the Plaintiff, including but not limited to the Defendants' discriminatory treatment and harassment of the Plaintiff due to the Plaintiff's race, religion, and national origin. This action includes certain pendant state law claims relating to the Defendant's unlawful employment practices against the Plaintiff.

### B. Parties

1. The Plaintiff, Steven Skibicki, is an individual of Hebrew descent and a Messianic Jew. The Plaintiff is a resident of Dayton, Texas and a citizen of the United States of America.

2. The Defendant, Community Rae Automotive, LLC (d/b/a Community Toyota), is a limited liability company organized and existing under the laws of the State of Texas. Service of process

can be had on the Defendant by and through its registered agent, Travis Crowder, at its registered office, 17207 Kuykendahl, Suite 104, Spring, Texas 77379.

### C. Jurisdiction and Venue

3. The Court has federal question jurisdiction over this litigation under 42 U.S.C. § 2000e-5(e), 42 U.S.C. § 2000e-5(f), and 28 U.S.C.§ 1331. The Court has supplemental jurisdiction over the pendant state law claims in this litigation under 28 U.S.C. § 1367.

4. The Plaintiff has exhausted the Plaintiff's administrative remedies through a filing with the United States Equal Employment Opportunity Commission ("EEOC").

5. In those administrative proceedings, the Plaintiff raised the claims, in one form or fashion, that the Plaintiff now raises in this complaint.

6. The Plaintiff files this civil action within 90 days of when the Plaintiff a right to sue letter from the EEOC.

7. Venue is proper in the Southern District of Texas under 28 U.S.C. § 1391(b)(2), (3). The Plaintiff was employed by the Defendant in the Southern District of Texas and the Defendant's conduct occurred in the Southern District of Texas.

### D. Facts

8. Since before February 7, 2020 and during all relevant time periods complained of herein, the Plaintiff, a person of Hebrew descent, has continuously and actively practiced Messianic Judaism. Messianic Judaism, like all Jewish traditions, is both ethnic (involving race/national origin) and religious.

9. Since before February 7, 2020 and during all relevant time periods complained of herein, the Defendant operated one or more automobile dealerships in Harris County, Texas, and the Defendant's principal business was the sale and service of automobiles. The Defendants business was "an industry affecting commerce."

10. During all relevant time periods complained of herein, the Defendant employed 15 or more employees for each working day in each of twenty or more calendar weeks in the 2020 calendar year, including any agent of such a person.

11. On or before January 29, 2020, the Defendant published an advertisement for a salesperson position. On or about January 29, 2020, the Plaintiff responded to the advertisement and applied for the salesperson position. On or about January 30, 2020, the Defendant interviewed the Plaintiff in Harris County, Texas.

12. Towards the end of the interview, the Defendant extended the Plaintiff an offer of employment as a salesperson.

13. During the interview, Defendant, by and through its agent, represented to the Plaintiff that the Defendant would employ the Plaintiff so long as the Plaintiff sold an average of eight cars of a three-month period.

14. The Plaintiff accepted the offer described above and began working for the Defendant as a salesperson on or about February 6, 2020.

15. The Defendant assigned the Defendant to work at a car dealership within the geographic boundaries of Harris County, Texas.

16. Maintaining a beard is a longstanding practice of male Messianic Jews that has deep religious significance.

17. On or about February 7, 2020, a supervisor employed by the Defendant sent the Plaintiff for a haircut and a shave.

18. The Plaintiff protested shaving his beard and explained that maintaining a beard has religious significance to the Plaintiff.

19. In response, the supervisor told the Plaintiff that shaving the Plaintiff's beard was necessary for the Plaintiff to "fit in" or assimilate into the Defendant's workplace culture.

20. The supervisor also told the Plaintiff that another employee refused to shave and was denied advancement because of it, insinuating that the Plaintiff would be denied advancement if he did not shave his beard.

21. Although the Defendant could have implemented reasonable accommodations that would have allowed the Plaintiff to maintain his full beard, the Defendant made no attempt to do so despite the Plaintiff's protest.

22. The Plaintiff ultimately submitted, and while he was not fully shaved, the bulk of his beard was cut off. This humiliated the Plaintiff.

23. The Plaintiff observed that the Defendant did not subject its Anglo-American employees to the same humiliating practice.

24. On or about February 7, 2020, the Defendant, by and through an agent, informed the Plaintiff that the Plaintiff and other new hires would be shadowing other, more experienced salespeople employed by the Defendant.

25. On or about February 8, 2020, the Plaintiff sold his first car while in the Defendant's employ.

26. Around that time, the Plaintiff developed a rapport with some of his co-workers and the Plaintiff disclosed his ethnicity, national origin, and religion to some of his co-workers.

27. One co-worker warned the Plaintiff that racism was a problem in their workplace. As a result of that interaction and others, the Defendant became familiar with the Plaintiff's ethnicity, national origin, and religion.

28. On or about February 10, 2020, the Defendant, by and through an agent, gave the Plaintiff a name tag that read "Steven Ski**BICH**i" (emphasis added).

29. Although the Plaintiff asked for a replacement name tag, he was never given one.

30. Pursuant to the Defendant's policy, the Plaintiff was required to wear the name tag. The Plaintiff did so, although it was deeply humiliating.

31. The Plaintiff observed that the Defendant did not subject its other employees, all of whom were of non-Hebrew descent, to the same humiliating practice.

32. The Plaintiff socialized with his co-workers on or about the evening of February 11, 2020, after work hours. That evening, the Plaintiff's co-workers learned that the Plaintiff had a tattoo of religious significance that was normally concealed during work hours. That evening additional co-workers learned that the Plaintiff is a Messianic Jew.

33. Thereafter, the Defendant denied the Plaintiff the opportunity to shadow other, more experienced salespeople employed by the Defendant.

34. The Plaintiff observed that the Defendant permitted other new hires, all of whom were of non-Hebrew descent, to shadow other, more experienced salespeople employed by the Defendant.

35. As part of its business practices, the Defendant utilized a computer system to track automobile sales and record sales conversations.

36. The Defendant, by and through its agents, denied the Plaintiff the opportunity to use the aforesaid computer system.

37. The Plaintiff observed that the Defendant permitted other new hires, all of whom were of non-Hebrew descent, to use the aforesaid computer system.

38. This denial ultimately resulted in inaccuracies and/or omissions in the Defendant's sales records.

39. During the Defendant's employment of the Plaintiff, the Defendant effectively prohibited the Plaintiff from accessing certain human resources material. This material included an online system and handbook.

40. The Plaintiff observed that the Defendant's other employees, all of whom were non-Hebrew, were permitted to access the aforementioned material freely.

41. The Plaintiff repeatedly attempted to ensure that his human resources training/paperwork was current. However, the Defendant, through its agents, told the Plaintiff that it "could wait."

42. Contrary to its prior statements, the Defendant never communicated a "hotline" phone number to the Plaintiff.

43. During the Defendant's employment of the Plaintiff, the Defendant's agents told the Plaintiff that he would be terminated if he walked down a hallway containing executive suites. These executive suites included, among other things, human resources personnel.

44. The Defendant did everything in its power to prevent the Plaintiff from raising a complaint of workplace discrimination.

45. On or about February 22, 2020, the Plaintiff suffered a medical complication involving one of his knees. The Defendant, by and through its agent, instructed the Defendant to take off work even though the Defendant was ready, willing, and able to work.

46. On or about February 24, 2020, during the Plaintiff's authorized medical absence, the Defendant, by and through an agent, sent the Plaintiff terminating the Plaintiff's employment.

47. During the period leading up to the Plaintiff's termination, the Plaintiff participated in a total of three car sales. However, one or more of these sales was not tracked in the Defendant's computer system for the reasons explained above.

48. The Plaintiff engaged and developed a rapport with the Defendant's customers. The Defendant's termination of the Plaintiff was a shameful, pretextual act of discrimination, based on and later justified with the Defendant's lies.

49. A supervisor employed by the Defendant acknowledged at least two of the Plaintiff's car sales.

50. The Plaintiff complained to the Defendant that he had not been given the agreed-upon three months to complete the Plaintiff's sales goals.

51. This complaint was met by an illogical response by the supervisor.

52. The Plaintiff observed that other new hires, all of which were non-Hebrew, were afforded three months to complete their sales goals.

### E. Cause of Action I – Discrimination on Basis of Race, Religion, and National Origin in Violation of 42 U.S.C. § 2000e-2

53. The Plaintiff re-alleges and incorporates by references the preceding paragraphs.

54. The Plaintiff is a member of a protected class in that he is a person of Hebrew descent and a Messianic Jew.

55. The Defendant treated the Plaintiff differently than individuals not in the Plaintiff's protect class in that: (a) the Defendant denied the Plaintiff training opportunities that the Defendant afforded to its non-Hebrew new hires; (b) the Defendant forced the Plaintiff to wear a humiliating name tag, whereas the Defendant did not subject its non-Hebrew employees to that practice; (c) the Defendant denied the Plaintiff opportunities to access human resources materials, whereas the Defendant did not subject its non-Hebrew employees to that practice; (d) the Defendant pressured the Plaintiff to cut off most of his beard, whereas the Defendant did not subject its non-Anglo employees to that practice; and (e) the Defendant prematurely termination the Plaintiff and breached the Plaintiff's employment contract without cause, whereas the Defendant did not subject its non-Hebrew employees to that practice.

56. The Plaintiff's race, religion, and national origin were the sole or motivating factors in the Defendant's actions and decision to terminate the Plaintiff's employment.

57. The Defendant's unlawful acts have caused the Plaintiff economic damages in the form of lost income, benefits, and consequential damages in an amount to be proved at trial, but which the Plaintiff estimates to be not less than $50,000.00.

58. The Defendant's unlawful acts have caused the plaintiff non-economic damages in the form of emotional distress, in an amount to be proved at trial, but which the Plaintiff estimates to be not less than $250,000.00.

59. Pursuant to 42 U.S.C. § 2000e-5(g), the Plaintiff is entitled to recover costs, disbursements, and reasonable attorney's fees incurred in this litigation.

### F.     Cause of Action II – Breach of Contract

60. The Plaintiff re-alleges and incorporates by references the preceding paragraphs.

61. The Plaintiff had an enforceable employment contract with the Defendant that limited the Defendant's right to discharge the Plaintiff at will.

62. As part of the aforementioned contract, the Plaintiff and the Defendant agreed that the Defendant would employ the Plaintiff so long as the Plaintiff sold an average of eight cars of a three-month period.

63. This contract was oral in its nature but may have been later memorialized in writing.

64. There was privity between the Plaintiff and the Defendant.

65. The Plaintiff performed, tendered performance of, or was excused from performing the Plaintiff's contractual obligations.

66. The Defendant breached the contract by wrongfully discharging the Plaintiff when the Plaintiff had not been afforded three months to complete the agreed upon average care sales quota.

67. The Defendant's breach caused the Plaintiff actual damages.

68. The Plaintiff specifically requests reasonable attorney's fees pursuant to Section 38.001 of the Texas Civil Practice and Remedies Code.

## G. Cause of Action II – Promissory Estoppel

69. The Plaintiff re-alleges and incorporates by references the preceding paragraphs.

70. The Defendant made a promise to the Plaintiff that that the Defendant would employ the Plaintiff so long as the Plaintiff sold an average of eight cars of a three-month period.

71. The Plaintiff reasonably and substantially relied on the aforementioned promise to the Plaintiff's detriment.

72. The Plaintiff's reliance was foreseeable by the Defendant.

73. Injustice can be avoided only by enforcing the Defendant's promise.

## H. Demand for Jury Trial

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Plaintiff demands a trial by jury in this action on all issues triable by a jury.

I. Prayer

The Plaintiff requests that the Defendant be summoned to appear and answer this complaint in any manner permitted by law. The Plaintiff prays that the Court afford the Plaintiff a trial by jury and, following a trial by jury, enter a judgment providing the following relief: (a) awarding the Plaintiff a money judgment against the Defendant for economic damages in an amount to be determined at trial, but presently estimated at not less than $50,000.00; (b) awarding the Plaintiff a money judgment against the Defendant for non-economic damages in an amount to be determined at trial, but presently estimated at not less than $250,000.00; (c) awarding the Plaintiff a money judgment against the Defendant for exemplary damages in an amount to be determined at trial, but presently estimated at not less than $700,000.00; (d) awarding the Plaintiff a money judgment against the Defendant for reasonable attorney's fees, disbursements, costs, pre-judgment interest, and post-judgment interest; as well as € awarding the Plaintiff such additional and further relief that the Plaintiff is justly entitled to at law and in equity.

Signed on June 8, 2021 by:

CHAPMAN LAW GROUP PLLC
2028 E Ben White Blvd #240-9200
Austin, TX 78741-6931

By: /s/ *Scott Maxwell Chapman*
Scott Maxwell Chapman, MA, JD
Attorney for Steven Skibicki
Texas Bar No. 24095834
Federal ID No. 3029747

Toll Free   (855) 440-1162
Local Tel.  (512) 920-0197
Fax         (737) 249-9270
E-Service   service@chapmanlaw.group